Please call the next case. 1132560 Esuvio Sanchez v. Field Potato Corporation Counsel, you may proceed. I'm just going to get a glass of water and a cup of coffee in the bank. Good afternoon. May it please the Court, Counsel. My name is Osvaldo Rodriguez. I represent Petitioner Plaintiff in this case, Esuvio Sanchez. We are here before you respectfully to request that you find that the Industrial Commission decision is against the manifest weight of the evidence. And the basis for that assertion is that it was based on speculation. Could you speak up a little bit? I'm sorry. I'm having trouble hearing you. Thank you. The basis for that assertion is that it's based on speculation, unsupported inferences, and a clear misinterpretation of the medical evidence in this case. This case is analogous to a heart attack, a heart attack to the leg. A heart attack to the heart happens when tissue dies in the heart. In this case, my client suffered a specific trauma on Friday, October 20th. That seems to be debatable. Pardon? That seems to be debatable according to the Commission's decision. They didn't believe he ever had an accident at all. Nothing to support it but his own testimony. Your Honor. Contrary testimony, by the way, by Mr. Yanez, who testified there was nothing wrong with him while he was working. And I saw nothing wrong with him when he clocked out that evening. And yet he testified he was limping all over the place. Your Honor, my client testified that he hurt his foot. My client testified that he was limping. And my client also continued to work. He only had 90 minutes left. And Yanez said he wasn't limping and he wasn't limping when he punched out. On cross-examination, he said basically I didn't see anything. I didn't see anything. Yanez testified he didn't see. You can't see through his foot. You can't see through his foot. No, no. He had no swelling. There's no question about that. He didn't see a mark on his foot. But the man testified that your client was not limping when he was working and was not limping when he clocked out. Is that correct? Did he testify to that? He testified to that on direct. Now, let me ask you a question. Let me ask you a question. We understand the accident was unwitnessed. Correct. There are no witnesses to the testimony. When's the first time that he reported to any medical provider where there's a record that this guy had a work accident? When's the first time that happened? Your Honor, I would submit that the first time was on October 25th or 26th when he said this started on Friday. My pain started on Friday. Who did he report that to is the question. Who did he report that to? There were two doctors. Pain started on Friday. Dr. Vitelli, glucose. No, we're not talking about when he said the pain started. I think what he's getting at, it wasn't until December 20th, 2006, six days after he filed the worker's compensation claim, that he made any mention of a work record accident that occurred in any medical records. Correct? Your Honor, again, with my analogy of the heart attack, if I have a heart attack right now because of the stress I'm under, I'm going to go to the hospital, and it will be days before they will know that I was before you, suffered a stressful event, and then ‑‑ Two months later? He testified he was in all this pain during that period of time. He was in a lot of pain. He did not know that the injury on Friday caused the B-spemic reaction, the inflammatory response, because he was diabetic, he was prone to that. He was susceptible to that. This man had diabetes myelitis, did he not? He had diabetes. Correct. And he had been treated prior to his work injury for diabetic neuropathy and bilateral ischemia. Ischemia. Ischemia. That's true? That is true, Your Honor. And, again, as I pointed out in my brief, those are two distinct systems. One is the nerve system, one is the plumbing vascular system. He did have neuropathy. He had nerve pain, which he was treated for. That is totally a different system than the vascular system. In this system, the vascular system, he suffered a trauma, however slight, that caused ‑‑ You keep assuming he suffered a trauma. He suffered a trauma. They didn't believe him. So now the question becomes, why is the portion of their decision that says they disbelieve he ever even had an accident against the manifest weight of the evidence? It's the preponderance of the evidence, Your Honor. That is the only evidence before them. No, no, no. They have to take that. Whoa, whoa, whoa. It is not the only evidence before him, no. Here's the evidence that's actually before him. He says he's limping all over the place at work. Janice says he isn't. He goes on his vacation to Mexico, winds up in a doctor's office in Mexico. The very next day. Ultimately treated and never tells the man he had any injury at work at all. Although he did, the man did know he was a diabetic. And he sends him back home telling him, you better do something about this. You could lose your leg. He winds up at the hospital when he returns on the plane that very day. He goes to the hospital and not a single mention anywhere in the hospital record of any injury at work. And he loses his leg, unfortunately. And your expert gives a causal connection opinion, but admits something. It's based on the assumption he actually had an accident at work. According to Dr. McCarthy, a minor foot injury is very unlikely to have caused an iliac and femoral artery thrombosis. And that's exactly what caused him his leg. So the commission turns around and says, we don't buy that this guy had an accident at all. We think this guy lost his leg because he had diabetes myelitis. And now comes the big jackpot question. Why is that against the manifest way to the evidence on the issue of whether he ever had an accident? Because he said he did? Well, your Honor, you could take everything that the commission does, not just one isolated thing. I think they've misconstrued the difference between neuropathy and a vascular injury. No, no, no. That has to do with what injury he suffered. It doesn't have to do with the question of whether he ever had an accident in the first instance. He testified. He said he did. At McNeil's, this pain started on Friday. Okay. Now you couple that with the testimony, his testimony, and you couple that with expert medical testimony, and you take the circumstances and the medical evidence. Mr. Rodriguez, all the expert medical testimony that you introduced assumes he was telling the truth when he said he had this accident. The commission didn't believe he had the accident. So the expert medical testimony on causation is really irrelevant to the question of whether their issue on accident is against the manifest way. Can you pin one thing down? Certainly. I will try. Similar to the last case. Is there any evidence to support a finding in favor of the claimant that does not emanate from the claimant? And what he has to say, is there any other corroborating evidence by way of any witnesses or anything else that does not stem from the claimant himself? At least answer that question. Now we can argue the merits of it. In all the cases, I believe the claimant must testify to an act, an incident at work. He did. But that's it. It stands or falls on him, correct?  And then you take everything in its totality, Your Honor. Well, all the medical over here doesn't answer that first question. Unless you have medical that says the outcome for this fellow, losing his leg, unfortunately, could only have arisen on that date, that place, with this mechanism of injury. And you don't have it. Is there medical that does that, that would corroborate his statement, on this date, at this time, this place, I experienced this mechanism of injury? Again, I go back to my analogy, Your Honor, with Aldous, the heart attack where you suffer a stressor, and because of a work-related incident, you don't know at 2.30 in the morning what's going on. So the answer is no. It all stems from the claimant, and now you have an explanation. But your answer is it all stems based on the claimant's testimony, correct? I think most cases do, Your Honor. Well, you don't understand. The standard here is manifest weight. And I don't know why people can't understand this. There's no right answer in manifest weight. If they had gone in your favor and he'd appealed, he'd lose, because your man testified that he was injured at this time, and the commission chose to believe him. But now the commission chooses not to believe your client, and you appeal. And he's going to come up here and tell us in about two seconds, credibility is a matter for the commission to decide. And therefore, it's not against the manifest weight of the evidence. There's no proper answer here. The question is, who do we owe the deference to? Well, Your Honor, again, as I started, the – when you take into account that the medical evidence, when you take into account what they said about the expert testimony, that I used undue influence requesting a clarification of his opinion. And, again, the type of case that this is, it's not I broke my toe when I stumbled and there's an x-ray that same day. It's I got hurt, I don't know what's going on, I had a preplanned vacation. I go and I'm having a lot of pain. I personally don't know what that is from. Well, don't you think that a finder of fact is going to look askance at the fact that Dr. Gappapendi, or whatever his name is, issues two reports on April the 28th or dated April the 28th, 2008, and then when he's deposed, admits that one of them was dated – dictated on April 30th, the other one was dictated on May the 19th. Your Honor. And it's only in the latter one that he comes up with a causation opinion. Both of those reports were turned over prior to that. Well, we understand they were. Both. And they also look askance at the fact that the very first mention of a work-related accident doesn't happen until six days after he filed a workers' comp claim, two months after the alleged event. Now, don't you think that that raises some suspicion in their mind? I think we're dealing with an individual who just didn't know what was required. He's a second-year in education. He hadn't missed a day of work in 18 years. He did the best that he could with the limited knowledge that he had, and he did not know what was going on with his leg. He did know that he got hurt at work, and he did say at McNeil, when he was taken from the airport to McNeil, this has been going on since Friday. I don't think there's any dispute that the man had been in pain since Friday. There's no disputing that. He went to the doctor in Mexico. We know that. So this man was in pain from the time he was on that airplane. I mean, I don't have any dispute with that, nor do they. The question is, what was the source of the pain? What was causing it? Again, I have a petitioner who says, I got hurt. This is the mechanism of my injury. I handle paper at a paper company. I stepped on a pallet. You have a witness come in and says, I didn't see anything. I didn't see him step on a pallet, but I didn't see him limping as he testified he was. And I turn across, I didn't see anything. You don't know what happened to that guy. No, I don't. Right. Thank you for your consideration. You'll have time to reply. Counsel, you may respond. Thank you, Your Honor. I'll grab some more water, if I may. Good afternoon, Your Honors. May it please the Court. Pat Martin, M-A-R-T-A-N, on behalf of the employer, respondent, appellee. Did we touch on the relevant issues? Oh, you touched on all the relevant issues that I want to get to. I'm just going to fill in some blanks, to the extent there are even any blanks, I suppose. The Court hears this every day, but I would be remiss if I didn't say that the issue in this case is whether the commission's fact determinations are against the manifest weight of the evidence. In other words, is an opposite conclusion truly apparent? Did the commission draw reasonable inferences, permissible inferences, based on the evidence? I submit to this Court that a unanimous commission did so. They drew reasonable evidences from the facts and came up with the proper conclusion. Winnowing this down, I don't think this case even involves a medical issue. It doesn't involve causal connection. I think when you winnow it down, it's an issue with respect to accident, as Your Honor is focused in on. So if we winnow this down, the issue is, was the commission's finding that the claimant failed to sustain an accident which arose out of and in the course of his employment a reasonable conclusion? Was it against the manifest weight of the evidence? Very briefly. We have here a labor of... We know the facts. I'm sorry? We're well acquainted with the facts, but doesn't it really boil down to, you can prevail on a claim with only your testimony if you're found credible? I think so. Okay. So what was it here that questioned, in the mind of the commission, the credibility of the claimant? I think what eventually undermined the credibility of the claimant were the other facts. Were the other... What were those facts? The facts, number one, Mr. Yanez, as Justice Hoffman mentioned, didn't see any indication of limping, didn't see any indication of any problem before or after this event. Number two, the accident itself, if you break it down mechanically, he stepped between two pallets. That's what he's claiming. The claimant was 5'5", 135 pounds. The claimant testified that the pallets were 5 inches apart. Well, I'm much taller than 5'5", and weigh much more than 135 pounds, and the width of my foot is much smaller than 5 inches. So I think what you can glean from this is that his foot did not get stuck between two pallets. Maybe he stepped between two pallets. I don't know. But his foot did not get stuck between two pallets. He took his foot out. Unwitnessed accident, which to some extent may undermine a claimant's credibility. No immediate medical attention, which again may undermine his credibility. He testified that his foot and ankle were not swollen. That undermines his credibility with respect to if he got hurt at work. He worked the remainder of his shift, which was only a couple hours. So he goes home. Well, he felt good enough to take a preplanned vacation later that day, and that vacation was going to Mexico. So the next 12 hours, he obviously wasn't in any severe pain. He felt like he could get on an airplane and fly to Mexico. Now, again, getting back to your question, Your Honor, this case boils down to the fact that the claimant did not tell any of his doctors within the first two months that he got hurt at work. I think the commission properly honed in on the initial history given to Dr. Cisneros in Mexico. Dr. Cisneros first saw the petitioner. No language barrier at that point. They both spoke Spanish. They were in Mexico. Dr. Cisneros stated that he had mild pain, which had worsened over the past two days, which incidentally was not true. Well, he never has mentioned anything about it being connected to work. Absolutely. Absolutely. There was no reason for him not to say that, was there? In fact, I submit that the person most likely, the medical provider most likely to get the proper history is the first doctor. That's when things are fresh in his head. No history of a work accident to Dr. Cisneros. No history of trauma. No mention of an injury at all. So Dr. Cisneros sends him back, and he eventually has the amputation at McNeil Hospital over a period of several days after several unsuccessful surgeries. There's a self-evident truth there, which I think goes without saying, and the commission as well as the courts have reiterated. A patient is going to tell his treating physician how he got hurt, how he or she got hurt, because they want, innately, they want adequate and proper medical care. And a corollary to that is that the first physician is often going to get the best history because it's fresh in the claimant's mind. In this case, it was only one day later. The commission probably placed a lot of weight on what Dr. Cisneros said because there was no language barrier, no history of injury, and no mention of an accident at work. Now, just as importantly, we have this battery of physicians at McNeil Hospital. I counted eight notations that's in the brief with six different doctors, none of whom stated that the patient, none of whom indicated the patient who got hurt at work. This whole claim may have been cured if the patient may have said five magic words at some point during his initial course of treatment. I hurt myself at work. He never did. Every history taken at McNeil Hospital seems to be just a little bit different. Some of them say he had pain for a few days. Some of them say he had pain for two months. But every one of those histories at McNeil Hospital, given to six different doctors on eight different occasions, is consistent with one thing. The common thread is that none of those histories say, indicate that the patient hurt himself at work. You'd think after a 15-day hospitalization, that's what it was, the patient at some point would have said, I hurt myself at work. I don't know. This case does standard follow the claimant's credibility. I believe it does. I believe it does. And the commission didn't find it in his favor. Correct, correct. And you look at all these other things. You've asked a couple of attorneys, what else is there besides the claimant's testimony? There's nothing. In fact, the medical records refute the claimant's testimony. And again, when do we get such a history? Finally, six days after the application is filed, when he's getting fitted for a prosthesis. Then he comes up with his best history in mid-December, late December of 2006. The petitioner is asking you, Your Honor, to re-weigh this evidence that was considered by the commission. They're asking you to re-determine questions of fact, which were unanimously and thoroughly covered in the decision. They're asking you to re-judge the credibility of the witnesses, especially the petitioner. And they're asking you to substitute your judgment for that of the commission. And I would ask that the appellate court decline that invitation and affirm the decision based upon accident and not even address the issue of causation, which I believe is moved. Thank you, counsel. Counsel, you may reply. You have five minutes to reply. I'll take that one. Again, what I am asking is that you take a look at the decision very critically, and it is the petitioner's belief that reasonable inferences were not drawn when you take the entire evidence. Something happened on Friday. Something happened that caused him pain. It happened at work. It initiated, it started the process. The petitioner's condition of ill-being started on that day. That he is unsophisticated in saying, Hey, I hurt my foot at work. Now I have this vascular problem, doctor. Take care of it. He shows up at the emergency room in pain, no pulse in his foot, and his foot was cold. That's all he knew. Just got out of a flight back in the morning from Mexico, is at the emergency room at McNeil Hospital at 8, 9 o'clock in the morning. That's what we're dealing with here, Your Honor. And again, I submit to you when you take a look at the entire evidence, I think the commission not only misconstrued the evidence, it drew an inference that it was not proper. Thank you for your time. Thank you, Counsel Bowles, for your arguments in this matter. It will be taken under advisement, and a written disposition shall issue. Madam Clerk, please.